UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re ) Case No. **19-33186-dwh12**
)
**Avalon Orchards, Inc.,** )
) **CHAPTER 12 PLAN DATED   11/26/19**
) ☐ Motion to Value Collateral
Debtor(s) ) ☐ Secured Claim Amount Limited with Creditor Consent

1. The debtor shall pay to the trustee (a) a periodic payment of $ **$31,590** every **six months** (insert either month, quarter, six months or year); (b) all proceeds from avoided transfers, including proceeds from transfers avoided by the trustee; (c) upon receipt by the debtor, all net tax refunds attributable to prepetition tax years and net tax refunds attributable to postpetition tax years (i.e., tax refunds not included on Schedule I, less tax paid by debtor for a deficiency shown on any tax return for that same postpetition tax year or tax paid by setoff by a tax agency for a postpetition tax year) received by the debtor during: ☐ The life of the plan, or ☐ 36 months from the date the first plan payment is due (*check applicable provision; if neither is checked, "for the life of the plan" applies*); (d) a lump sum payment of $**77,000** on **01/31/20** (date); and (e) _____.

2. From the payments so received, the trustee shall make disbursements as follows:
   (a) First, to the trustee's commission and expenses.
   (b) Second, with respect to secured creditors, the terms of the debtor's prepetition agreement with each secured creditor shall continue to apply, except as otherwise provided for in this plan or the confirmation order. Secured creditors shall retain their liens until the payment of the underlying debt, determined under nonbankruptcy law, or discharge under §1228, as appropriate. Any allowed secured claims will be paid as shown below. Should the trustee not have sufficient funds in trust to pay fully the disbursements listed below, disbursements of funds available shall be made pro rata. If a creditor is not fully secured, the unsecured portion of the creditor's claim shall be treated under the provisions of pt. 2(e) and (f) if the claim identifies the priority portion of the claim, and, if not, under the provisions of pt. 2(f) only. The following also apply:
   (1) To creditors whose claims have been timely filed and allowed as secured, make payments as follows: Estimated prepetition arrearages on property must be shown below, separately, and identified as such if debtor is curing defaults under 11 USC §1222(b)(5)). THE ARREARAGES AND TOTAL AMOUNT OF DEBT SHOWN IN A TIMELY FILED AND ALLOWED SECURED CLAIM SHALL CONTROL.

| Creditor | Collateral | Estimated Arrearage, if Curing | Collateral Value, if Not Paying in Full | Estimated Total Debt, if Paying in Full | Term of Payments | Post-confirmation Interest Rate | Periodic Payment |
|---|---|---|---|---|---|---|---|
| **Columbia State Bank (2018 Loan)** | **All assets** | **N/A** | | **$895,482** | **36 months** | **6.5%** | **See attached** |

If payments to a creditor are to begin after debtor's attorney has been paid, the payments to said attorney shall not exceed $_____ before the creditor is paid. If the debtor is not paying the debt in full, the debtor MOVES the court for an order fixing the value of the collateral as set forth above.

*If the collateral is not to be sold, the value of the collateral shall be fixed in the amount stated above for purposes of administration of this plan as well as for purposes of the amount of any secured claim, if undersecured, unless objected to at or before the first date set for the confirmation hearing on this plan or, if applicable, prior to expiration of time to object to this proposed modified plan, in which case the value will be determined by the court. If the collateral is to be sold the value shall be the sales price. The debtor MOVES the court for an order so fixing the value of the collateral. Otherwise, the creditor's proof of claim shall control.*

(2) DEBTOR PROPOSES THAT THE CREDITOR(S) SPECIFICALLY IDENTIFIED BELOW AGREE TO THE FOLLOWING TREATMENT WHICH THE COURT MIGHT NOT BE ABLE TO APPROVE ABSENT CONSENT OF CREDITOR(S). FAILURE OF CREDITOR(S) TO FILE A WRITTEN OBJECTION TO THIS PLAN PRIOR TO CONFIRMATION SHALL CONSTITUTE ACCEPTANCE OF THE PLAN. FROM THE PAYMENTS RECEIVED PURSUANT TO PT. 1, IF A CLAIM HAS BEEN TIMELY FILED AND ALLOWED AS SECURED, MAKE PAYMENTS TO THE FOLLOWING HOLDERS OF SUCH CLAIMS AS DETAILED BELOW. ESTIMATED PREPETITION ARREARAGES, IF CURING AND REINSTATING, MUST BE SHOWN BELOW. THE ARREARAGES SHOWIN IN A TIMELY FILED AND ALLOWED SECURED CLAIM SHALL CONTROL.

| Creditor | Collateral | Estimated Arrearage, if Curing | Collateral Value, if Not Paying in Full | Estimated Total Debt, if Paying in Full | Term of Payments | Post-confirmation Interest Rate | Periodic Payment |
|---|---|---|---|---|---|---|---|
| **Rick & Sydney Blaine** | **All assets** | | **See attached** | | | | |
| **Heather Blaine** | **None** | | **See attached** | | | | |

1200.05 (12/1/14) Page 1 of 3

*If the collateral is not to be sold, for purposes of administration of this plan and case, the secured claim shall be limited to the value of the collateral stated above, unless creditor(s) objects at or before the first date set for the confirmation hearing on this plan or, if applicable, prior to expiration of time to object to any proposed modified plan, in which case, the values will be determined by the court. If the collateral is to be sold, the value shall be the sales price. The debtor MOVES the court for an order so fixing the value of the collateral.*

(3) Adequate protection payments shall be disbursed by the trustee pre-confirmation from funds on hand with the trustee in the payment amounts specified in the plan for the subject secured creditors, absent a provision in this plan or a court order providing for a different amount to be paid preconfirmation. If the debtor fails to make monthly payments sufficient to pay the adequate protection payments in full, the trustee will disburse available funds pro rata according to the payments proposed for subject secured creditors. Adequate protection payments paid through the trustee preconfirmation will be deducted from the amount of the allowed claim. Unless the concerned secured creditor is fully secured or oversecured, no interest shall be paid from the date of the filing of the petition to the date of confirmation unless otherwise specifically provided for in the payment provisions set forth above.

(4) The debtor shall surrender any collateral which is not otherwise addressed by the terms of this plan no later than upon confirmation of this plan to the following creditors (state creditor NAME and DESCRIBE collateral to be surrendered):

**None.**

(c) Third, pro rata, until fully paid, allowed unsecured domestic support obligations.
(d) Fourth, allowed administrative expenses under §507(a)(2).
(e) Fifth, pro rata, until fully paid, to allowed priority claims in the order stated in §507(a)(3)-(10), unless otherwise ordered.
(f) Sixth, pro rata, to timely filed and allowed nonpriority unsecured claims, the amounts required by §1225(b)(1). These monies will be distributed in the method indicated in the applicable section marked below. The terms of pt. 8 shall also apply.
  ☐ (1) The creditors will receive approximately _____% of their claims. This percentage will vary depending on the amount of total creditors' claims filed.
  ☒ (2) The creditors will receive a minimum **100**% of their claims. This percentage will not be reduced despite the amount of total creditors' claims filed.
(g) Pursuant to §1225(a)(4), the unsecured creditors as a group will receive ☒ 100% ☐ a minimum of $_____ (*check applicable provision; if neither is checked, "100%" controls*) plus **0**% shall be paid on all timely filed and allowed priority and nonpriority unsecured claims from the date of plan confirmation to compensate for deferred payment.

3. The debtor moves for assumption of the following executory contracts and leases:

| Creditor | Amount of Default [State if None] | Cure Provisions |
|---|---|---|
| **Blaine Limited Partnership** | **None** | **N/A** |
| **Sundale Orchard LLC** | **None** | **N/A** |

Those executory contracts or leases not specifically mentioned above are treated as rejected. Any timely filed and allowed claim arising from rejection shall be treated under pt. 2(f). The debtor will pay all assumed executory contracts and leases directly, including amounts required to cure. The debtor shall surrender any property covered by rejected executory contracts or leases to the affected creditor no later than upon confirmation of this plan.

4. The debtor shall pay directly to each of the following creditors, whose debts are fully secured, the regular payment due postpetition on these claims in accordance with the terms of their respective contracts, list any prepetition arrearages in pt. 2(b), and/or specify any other treatment of such secured creditor(s) in pt. 2(b):

**Columbia State Bank Loan No. 1309005970 (Equipment Loan), and Columbia State Bank Loan No. 1012005327 (Term Loan).**

**See attached.**

5. The property described below is to be sold [also state offering price and whether it will be offered through a broker (and if so, who), and state date by which it will be sold and what will occur if it is not timely sold], all offers received by the debtor shall be promptly communicated to the trustee and lienholders, and no sale of such property shall be completed without notice to lienholders and the trustee and an opportunity for a hearing:

**Avalon reserves the right to sell certain surplus equipment and pay the net proceeds directly to Columbia State Bank. Sales, if any, of surplus equipment will take place by December, 2020. The real estate known as the Wamic Orchard, which is not property of this estate (and is owned by Blaine Limited Partnership), will continue to be listed for sale.**

6. Subject to the provisions of §502, untimely claims are disallowed, without the need for formal objection, unless allowed by court order.

7. Except as provided in this plan or in the order confirming the plan, upon confirmation of this plan all of the property of the estate shall

8. [To be completed if plan will not be completed until more than 36 months after the first plan payment due under the originally filed plan.] The scheduled month and year the plan will be completed is _____ and the cause for a plan longer than 36 months is: _____.
   Except as otherwise explicitly provided by pt. _____, the debtor shall make plan payments for the longer of either: (a) 36 months from the date the first payment is due under the original plan, unless the debtor pays 100% of all claims with interest if required, or (b) the time necessary to complete required payments to creditors.

9. This plan may be altered postconfirmation in a non-material manner by court order after notice to the debtor, the trustee, any creditor whose claim is the subject of the modification, and any interested party who has requested special notice.

10. Except as otherwise provided herein, (a) postpetition interest on all unsecured claims is disallowed, and (b) unsecured claims allowed in the amount of $25 or less, to the extent claims of that class are entitled to a distribution under this plan, shall be paid in the full amount allowed prior to any payments to other unsecured claims of the same class.

**11. The order of confirmation shall not preclude the assertion by Avalon against any creditor of any and all objections to claims, nor the raising by Avalon of offsets, defenses, and counterclaims against any creditor.**

By Richard T. Blaine

DATED: **11/26/19**  **Avalon Orchards, Inc.**
DEBTOR

**CERTIFICATE OF SERVICE on Creditors/Parties Treated in Paragraphs 2(b)(1)** and **(2)** (under the "Collateral Value, if Not Paying in Full" columns) and **3** (see FRBPs 3012, 7004, and 9014, and LBR 6006-1(b)).

I certify that copies of this plan and the notice of hearing to confirm this plan were served as follows:

a) For creditors/parties who are **not** Insured Depository Institutions (served by court) (see FRBP 7004(b)), I either listed the creditors/parties in the mailing list filed with the court exactly as follows, OR, on (insert date) _____, I served the above-documents by first-class mail to the creditors/parties at the names and addresses exactly as follows (list each creditor/party, the person or entity the creditor/party was served through, and the address):

b) For Insured Depository Institutions (see FRBP 7004(h)), on (insert date) _____, I served the above-documents by certified mail, or by other authorized means (specify), at the name and address exactly as follows (list each insured depository institution, the person or entity the institution was served through, and the address):

DEBTOR OR DEBTOR'S ATTORNEY

1200.05 (12/1/14) Page 3 of 3

**ADDENDUM TO PLAN**

Paragraph 1.

Avalon Orchards Inc. ("Avalon") will make payments twice a year to the Trustee in the amount of $31,590. See paragraph 2(b)(1) below regarding the distribution of funds.

In addition to the payments noted above, on or before January 31, 2020, Avalon will make a single lump sum payment to the Trustee in an amount sufficient to pay 100% of all allowed unsecured claims including the commission to the Trustee. Avalon estimates that the payment will be approximately $77,000, but reserves the right to audit, review, and object to any unsecured claim prior to payment.

Paragraph 2(b)(1).

Columbia State Bank (the "Bank").

Loan No. 17200358 (2018 Loan). Rick and Sydney Blaine (the "Blaines") are co-borrowers under that certain Promissory Note with the Bank dated January 1, 2018 in the original principal amount of $2,578,000 (the "2018 Loan"). Avalon is a guarantor of the 2018 Loan and the owner of certain real property commonly known as the Parkdale Orchard located in Hood River County, Oregon, which property secures repayment of the 2018 Loan.

On or about October 1, 2019 the sum of $1,467,718.17 was paid to the Bank and applied to the 2018 Loan from the net sale proceeds received from the sale of the Fletcher Road Orchard, owned by the Blaine Limited Partnership ("BLP"). The application of the Fletcher Road Orchard sale proceeds to the 2018 Loan reduced the principal balance owed on the 2018 Loan to approximately $895,482.

The 2018 Loan (approximately $895,482) will be paid within 36 months of confirmation as follows: interest will accrue on the unpaid principal balance at 6.5% per annum, and Avalon will make semi-annual payments to the Trustee of interest only of $29,250, which payments will be due on July 15, 2020, December, 15, 2020, July 15, 2021, December 15, 2021, and July 15, 2022, with a balloon payment of all remaining amounts due on the 2018 Loan (principal and interest) on December, 15, 2022.

Avalon will pay the 2018 Loan through one or more of the following: (a) the sale or refinance of real property assets owned by Avalon, the Blaines, Sundale Fruit Company LLC ("Sundale"), and/or BLP; (b) the sale or refinance of personal property assets owned by Avalon, the Blaines, Sundale, and/or BLP; and/or (c) crop proceeds received from the sale of Avalon's crops in excess of amounts needed to fund ongoing operating expenses needed for current orchard operations.

Paragraph 2.2.

The Blaines are the holders of allowed claims against the Debtor that are secured by assets of Avalon. The Blaines will receive no payments under the plan, but will retain their liens and claims.

Heather Blaine is the holder of an allowed unsecured claim against Avalon in the amount of $50,000. Heather Blaine will receive no payments on her allowed claim under the plan until all other allowed claims are paid.

Paragraph 4.

Loan No. 1309005970 (Equipment Loan). The Blaines are co-borrowers under that certain Commercial Promissory Note (the "Equipment Loan") with the Bank dated September 25, 2013 in the original principal amount of $250,000. Avalon is a guarantor of the Equipment Loan and the owner of the equipment and personal property collateral securing repayment of the Equipment Loan pursuant to that certain guaranty dated December 3, 2012 (the "2012 Guaranty").

The Equipment Loan will continue to be paid pursuant to the Equipment Loan terms. Annual payments on the Equipment Loan will be made to the Bank by Avalon (or the Blaines) in the amount of $32,918.11 each on or before October 1, of 2020 and on October 1 of each subsequent year until the Equipment Loan is paid in full.

In the event Avalon sells any equipment subject to the Bank's liens, Avalon will pay directly to the Bank the net sale proceeds received from such sale of equipment as and when such sales are closed, with proceeds to be applied by the Bank to the unpaid principal balance of the Equipment Loan. Interest shall continue to accrue at the non-default rate as provided in the Equipment Loan. The Bank shall retain its liens on the collateral that secures repayment of the Equipment Loan.

Loan No. 1012005327 (Term Loan). The Blaines are co-borrowers under that certain Commercial Promissory Note dated September 10, 2012 (the "Term Loan") which loan currently has an unpaid principal balance of $722,018. Avalon is a guarantor of the Term Loan pursuant to the 2012 Guaranty and Avalon is the owner of the real property commonly known as the Highway 35 Orchard located in Hood River County, Oregon, which property secures repayment of the Term Loan.

The Term Loan will continue to be paid on the same terms and conditions as currently exist under the Term Loan documents (including interest at the non-default contract rate). Annual payments on the Term Loan will be due on or before September 10 of each year as provided in the Term Loan documents. The Term Loan will continue to be secured by the Bank's liens against the real property commonly known as the Highway 35 Orchard.

Subordination of the Bank's Crop Liens to New Financing.

Under the Chapter 12 Plan, Avalon will have the continued use of cash collateral to fund ordinary and necessary expenses associated with the orchard operations during the life of the plan. In addition, any lien claimed by the Bank against crops or crop proceeds for the 2019, 2020, 2021, and 2022 crop years will be subordinated to any new revolving crop financing obtained by Avalon for operating expenses, with such financing and subordination not to exceed $700,000 at any one time during the life of the plan.

# AVALON ORCHARDS, INC.

# PROJECTED INCOME AND EXPENSES 2020

AVALON ORCHARDS, INC.

## PEARS & APPLES (by the bin)

| LOCATION | CROP | CROP PROJECTIONS 2020 | | | CROP PROJECTIONS 2019 | | |
|---|---|---|---|---|---|---|---|
| | | 2020 Estimate # of Bins | Plastic bins Estimate $ / Bin | Estimate Total | 2019 Final # of Bins | Estimate $ / Bin | Estimate Total |
| HR #1 Pears Parkdale | STARK CRIMSON | 20 | $200 | $4,000 | 19 | $250 | $4,750 |
| | RED SENSATION (Bartlett) | 30 | $150 | $4,500 | 31 | $150 | $4,650 |
| | GREEN BARTLETT | 300 | $225 | $67,500 | 280 | $250 | $70,000 |
| | ANJOU | 1300 | $225 | $292,500 | 1338 | $225 | $301,050 |
| | HR #1 Pear TOTAL | 1650 | | $368,500 | 1668 | | $380,450 |
| HR #2 Pears Hwy 35 | RED SENSATION (Bartlett) | 0 | | $0 | 0 | | $0 |
| | GREEN BARTLETT | 450 | $250 | $112,500 | 487 | $250 | $121,750 |
| | BOSC | 250 | $250 | $62,500 | 206 | $350 | $62,500 |
| | COMICE | 0 | | $0 | 0 | | $0 |
| | ANJOU | 750 | $250 | $187,500 | 885 | $225 | $199,125 |
| | HR #2 Pear TOTAL | 1450 | | $362,500 | 1578 | | $383,375 |
| HR #2 Apples | GRANNIES | 75 | $200 | $15,000 | 99 | $200 | $19,800 |
| | HR #2 Apple TOTAL | 75 | | $15,000 | 99 | $200 | $16,000 |
| HR #3 Pears Fletcher Dr. (Sold 2019) | GREEN BARTLETT | | | | 195 | $250 | $48,750 |
| | Anjou | | | | 483 | $225 | $108,675 |
| | Bosc | | | | 33 | $300 | $9,900 |
| | | | | | | | $0 |
| | HR #3 Pear TOTAL | 0 | | $0 | 711 | | $167,325 |
| WAMIC | GOLDENS | 1000 | $150 | $150,000 | 1395 | $150 | $209,250 |
| | Grannies | 100 | $150 | $15,000 | 69 | $150 | $10,350 |
| | REDS | 150 | $150 | $22,500 | 83 | $100 | $8,300 |
| | HONEYCRISP | 750 | $600 | $450,000 | 677 | $500 | $338,500 |
| | WAMIC Apple TOTAL | 2000 | | $637,500 | 2224 | | $566,400 |
| OREGON TOTAL: PEARS & APPLES | | 5175 | | $1,383,500 | 6280 | | $1,513,550 |
| SUNDALE | BUCKEYE GALAS | 1200 | $200 | $240,000 | 1202 | $250 | $300,500 |
| | IMPERIAL GALAS | 75 | $150 | $11,250 | 94 | $150 | $14,100 |
| | GRANNIES | 3000 | $200 | $600,000 | 3153 | $200 | $630,600 |
| | FUJIS | 300 | $150 | $45,000 | 397 | $225 | $89,325 |
| | SUNDALE Apple TOTAL | 4575 | | $896,250 | 4846 | | $1,034,525 |
| WASHINGTON TOTAL: PEARS & APPLES | | 4575 | | $896,250 | 4846 | | $1,034,525 |
| OR / WA GRAND TOTAL: PEARS & APPLES | | 9,750 | | $2,279,750 | 11126 | | $2,548,075 |

## CHERRIES ("Realized": actually received)
(Borton gives us Cherry figures by the pound, not by the bin or ton)

| | | Estimated | | Realized | | Realized | |
|---|---|---|---|---|---|---|---|
| | | 2020 tons est. | Est pymt per ton | 2020 | 2019 total pounds "Lbs. Ran" | | 2019 | |
| Hood River | Cherries | | | | 99,172 | $ 0.650 | $63,995 |
| Wamic | Cherries | 100 | $ 0.700 | $140,000 | 80,788 | $ 0.640 | $52,015 |
| Sundale | Cherries | 120 | $ 0.750 | $264,000 | 233,813 | $ 0.690 | $161,112 |
| CHERRIES: TOTALS | | 220 | | $404,000 | 413,773 | | $277,122 |
| | | | | | "tons" 206.88 | | |

**2020 TOTAL ESTIMATE:** ALL LOCATIONS - APPLES, PEARS & CHERRIES  $3,021,500

**2019 TOTAL ESTIMATE:** ALL LOCATIONS - APPLES, PEARS & CHERRIES  $2,825,197

C:\Users\avalo\Documents\Avalon\Avalon Folder\CROP RECORDS\Misc\Projections 2019-2020 using Realized 2019 cherry income and poundage As of 11/26/2019

Case 19-33186-dwh12    Doc 67    Filed 11/26/19

Avalon Orchards, Inc. — Expense Distribution Budget 2020

| Description | JAN | FEB | MAR | APR | MAY | JUNE | JULY | AUG | SEPT | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ADVERTISING | 250 | | 250 | | | 250 | | | | | | | 750 |
| BEES | | | | | 13,000 | | | | | | | | 13,000 |
| CHEMICALS | | | | 20,000 | 30,500 | 30,000 | 20,000 | 20,000 | 15,000 | 13,000 | 9,000 | | 157,500 |
| EMPLOYEE HOUSING | | | 500 | | | | 300 | | | | | 500 | 1,300 |
| EMPLOYEE SAFETY | | 100 | 200 | 300 | 0 | 300 | 300 | | | | | | 1,200 |
| FEED | | 200 | | 100 | | | | | 12,000 | | 200 | | 12,500 |
| FERTILIZER | | 7,000 | 2,000 | | 6,000 | 5,000 | | | | | | 5,000 | 25,000 |
| FUEL | 2,500 | 1,500 | 6,000 | 10,000 | 2,000 | 7,000 | 3,000 | 5,000 | 4,500 | 5,500 | 4,000 | 2,000 | 53,000 |
| HAULING /FREIGHT/ODOT | | | 200 | | | 200 | 400 | | 400 | | | 200 | 1,400 |
| H2A | 2,000 | 3,000 | 5,000 | 3,500 | 3,500 | 5,000 | 500 | | | 6,000 | 4,000 | 0 | 32,500 |
| INSURANCE | 2,800 | 2,800 | 3,500 | 3,300 | 3,300 | 2,800 | 300 | 1,500 | 2,800 | 3,300 | 7,000 | 3,000 | 36,400 |
| LABOR | 25,000 | 30,000 | 55,000 | 70,000 | 85,000 | 91,000 | 130,000 | 92,000 | 90,000 | 140,000 | 62,000 | 25,000 | 895,000 |
| LABOR OFFICERS | 12,000 | 7,000 | 8,000 | 8,000 | 8,000 | 6,500 | 7,500 | 8,500 | 7,500 | 7,500 | 2,000 | 6,000 | 88,500 |
| LEGAL & ACCOUNTING | 14,000 | 2,500 | | 4,000 | 1,000 | 15,000 | | 10,000 | | | 2,500 | 2,500 | 51,500 |
| Licenses/Permits | | | | 500 | | | 400 | | | | | 600 | 1,500 |
| MISC EXPENSES | 500 | | 1,500 | | | 500 | 3,000 | 500 | 500 | 500 | 500 | | 7,500 |
| OFFICE EXPENSE / DUES | 0 | | 250 | 400 | | | | 250 | 500 | 250 | | 250 | 2,100 |
| RENTALS | | | 2500 | | | | | | | | | 200 | 2,500 |
| REPAIRS | 300 | 3,000 | 2,500 | 2,000 | 5,000 | 2,500 | 2,500 | 5,000 | 1,500 | 1,500 | 1,200 | 1,500 | 28,500 |
| SUPPLIES | 500 | 300 | 500 | 500 | 1,000 | 1,000 | 1,800 | 1,500 | 2,800 | 1,500 | 500 | 1,000 | 12,900 |
| PAYROLL TAXES | 5,000 | 4,000 | 5,000 | 10,000 | 10,000 | 12,000 | 10,000 | 15,000 | 17,000 | 15,000 | 10,000 | 6,500 | 119,500 |
| PROPERTY TAX/Irr.Fees | | 5,000 | 4,200 | | 5,000 | | | | | 5,000 | | | 19,200 |
| UTILITIES | 3,000 | 4,500 | 5,000 | 4,000 | 4,000 | 6,000 | 9,000 | 12,000 | | 9,500 | 2,000 | 3,000 | 62,000 |
| VEHICLES / LICENSES | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 6,600 |
| BANK FEES | | | | | | | | | | | 7,000 | 3,000 | 10,000 |
| TRACTORS | | | | | | | | 3,264 | | | | | 3,264 |
| CAPITAL PURCHASES | 2,500 | | | | 1,500 | | 5,000 | | 5,000 | | | 0 | 14,000 |
| AGRI ACESS LOAN | 64,000 | | 103,469 | | | | 64,000 | | | | | | 231,469 |
| TREES | 1,000 | | | | | 1,500 | | | | | | 1,000 | 3,500 |
| HOUSING | | 1,000 | | | 500 | | | | | | | 0 | 1,500 |
| Term Loan CSB | | | | | | | | | 43,838 | | | | 43,838 |
| Loan 05970 | | | | | | | | | | 32,918 | | | 32,918 |
| Sundale lease obligations est | 7,100 | 7,100 | 90,000 | 7,100 | 20,200 | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 | 1,972,339 / 181,200 |
| LP lease obligations est. | 5,000 | 5,000 | 70,000 | 5,000 | 6,300 | 5,000 | 5,000 | 5,000 | 24,000 | 5,000 | 5,000 | 5,000 | 145,300 |
| TOTAL | 148,000 | 84,550 | 366,119 | 149,250 | 206,350 | 199,200 | 270,900 | 199,414 | 222,738 | 248,868 | 129,800 | 73,650 | 2,298,839 |

Note: timing of expenses variable, depending on weather and crop size and timing.

11/26/19

C:\Users\avalo\Documents\Avalon\Avalon Folder\Banking Folder\Budgets\2020 budget court

# AVALON ORCHARDS, INC.
# LIQUIDATION ANALYSIS

**ASSETS:**

| | |
|---|---|
| Parkdale Orchard | $3,000,000 |
| Highway 35 Orchard | $2,250,000 |
| 2019 Crop Inventory | $2,500,000 |
| Equipment | $ 800,000 |
| TOTAL | $8,550,000* |

*All asset values represent estimated liquidation value.

**LIABILITIES:**

| | |
|---|---|
| Unsecured Debt | $    77,000 |
| Columbia State Bank (2018 Loan) | $  895,482 |
| Columbia State Bank (Equipment Loan) | $  115,888 |
| Columbia State Bank (Term Loan) | $  722,018 |
| TOTAL | $1,810,388 |